UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 1:22cr16-MR-WCM |
| | ) | |
| | ) | **BILL OF INFORMATION** |
| vs. | ) | |
| | ) | Violations: |
| | ) | 18 U.S.C. § 1344 |
| SHAWN THOMAS JOHNSON, | ) | |
| Defendant. | ) | |

**THE UNITED STATES ATTORNEY CHARGES:**

**Introductory Paragraphs**

At the specified times, and at all relevant times:

1. The defendant, SHAWN THOMAS JOHNSON, resided and did business in Buncombe County, within the Western District of North Carolina.

2. At different times relevant to this Bill of Information, JOHNSON did business under the following corporate entities:

    a. Closing Tree LLC;
    b. Closing Tree Real Estate Company;
    c. Stay Asheville Inc;
    d. GRB Springwood Drive LLC;
    e. 18 Brennan Broke Me LLC;
    f. 26 Uncle Drive LLC;
    g. 60 Velvet Ridge Lane LLC;
    h. 64 Velvet Ridge LLC
    i. 325 Haywood Check the Deed! LLC
    j. 327 Haywood CHECK THE DEED! LLC;
    k. Asheville Vacation Rental Pros LLC;
    l. East West AVL Dev LLC;
    m. GRB 16 Upstream Way Inc;
    n. GRB 22 Edwards St Inc;
    o. GRB 26 Uncle Drive Company;

    p. GRB 31 Daniel Brooke Dr Inc;
    q. GRB 64 Pine Cone Drive Inc;
    r. GRB 325 Haywood Rd Inc;
    s. GRB 446 N Louisiana Ave Inc;
    t. GRB Apogee Dr LLC;
    u. GRB Sand Hill Road Company;
    v. Leloo Dallas Multipass LLC;
    w. The Spice Must Flow LLC;
    x. This Court Finds in Favor of Shawn Johnson 561 Emma Road LLC.

3. JOHNSON maintained a real estate broker license from the North Carolina Real Estate Commission from on or about October 19, 2015, until on or about February 13, 2019.

4. Beginning in 2012, JOHNSON began acquiring real estate properties in Buncombe County and elsewhere to use as short-term rentals listed on online platforms such as Airbnb, Homeaway, and VRBO. JOHNSON used a variety of means to acquire interests in these properties to build his business. Sometimes JOHNSON would apply for traditional mortgage loans for homes from financial institutions (as defined in Title 18, United States Code, Section 20). JOHNSON also recruited other people to obtain loans to purchase homes that JOHNSON would list as short-term rentals and share the proceeds, without disclosing JOHNSON's financial interest in the properties to the lenders.

5. When seeking loans from financial institutions, JOHNSON, and others both known and unknown to the United States Attorney (at JOHNSON's direction), made material misrepresentations to the financial institutions to induce them to make the loans. These fraudulent statements included, among others:

- False claims that the homes would be used as primary residences, when in fact the homes were intended for immediate use as short-term rentals;
- False statements about income and employment, including the presentation of fictitious pay stubs or other similar proof of employment;
- Misidentifying sources of funds for use as down-payments;
- Omitting information concerning lawsuits against the borrowers;
- Presenting fictitious rental agreements and false information about rental income; and,
- Failing to disclose the existence of other loans or financial obligations.

6. From August 2012 through to November 2019, JOHNSON and his co-conspirators closed on at least sixteen loans from financial institutions, totaling over $3.5 million, to purchase real estate. In all these loans, JOHNSON made, or directed to be made, material misrepresentations of fact to induce the financial institutions to make the loans. Once acquired, JOHNSON used these properties to generate income as short-term rentals.

7. Local laws, ordinances, and zoning regulations prohibited the use of many of these houses as short-term rentals. JOHNSON and his co-conspirators intentionally misrepresented to the lenders that these houses would be used as primary residences to conceal their intended purpose. The financial institutions backing these loans would not have approved them had they known that the houses would be used as short-term rentals in violation of these laws, ordinances, and zoning regulations.

### Example #1: 23 Springwood Drive, Asheville, North Carolina 28806

8. For example, on or about September 7, 2012, JOHNSON obtained a loan from the State Employees Credit Union, a financial institution as defined by Title 18, United States Code, Section 20, for $225,000 to purchase a home located at 23 Springwood Drive, Asheville, North Carolina. The State Employees Credit Union was an NCUA-insured financial institution.

9. JOHNSON signed a loan application on August 3, 2012, in which he claimed that he worked as the IT Director for Wild Flower Mountain, LLC, and that he earned a monthly income of $6,736.98 from that employment. However, JOHNSON was never an employee of Wild Flower Mountain, LLC. JOHNSON also provided two fraudulent payment statements purporting to be from Wild Flower Mountain, LLC to support his false claim of employment. Wild Flower Mountain, LLC was owned and operated by the parents of JOHNSON's then-girlfriend. JOHNSON used computer software to fabricate fraudulent income statements for himself from Wild Flower Mountain, LLC. The State Employees Credit Union relied upon these material misrepresentations when issuing the loan.

### Example #2: 31 Daniel Brooke Drive, Asheville, North Carolina 28806

10. JOHNSON and a co-conspirator, "T.F.," sought to purchase a house at 31 Daniel Brooke Drive, Asheville, North Carolina, to use as a short-term rental. JOHNSON and T.F. agreed to split proceeds from the rental of the property. The Federal National Mortgage Association (otherwise known as "Fannie Mae") owned the home due to foreclosure from the previous occupant, and T.F. purchased the home at auction with JOHNSON acting as the buyer's real estate agent.

11. T.F. was a veteran of the United States Navy, and as such was able to qualify for a VA-backed loan with more favorable terms than were typically available for conventional mortgage loans. However, VA-backed loans could not be used to purchase rental properties—they were only available to purchase a primary residence.

12. In January 2016, at JOHNSON's request, T.F. applied for a VA-backed loan to purchase the property through Plum Dog Financial, LLC, a mortgage lending business registered in the State of North Carolina (and a "financial institution" as defined by Title 18, United States Code, Sections 20 and 27). On multiple documents in the application package, T.F. certified that the property would be used as a primary residence, even though JOHNSON and T.F. secretly had

agreed to immediately use the property as a short-term rental. T.F. never intended to occupy the property. T.F. also falsely certified that the loan was not sought on behalf of an investor purchaser.

13. T.F. also falsely claimed to reside at 26 Uncle Drive, Asheville, NC 28806. JOHNSON owned the property at that address, and T.F. never rented nor resided at that address.

14. Relying on these false statements, Plum Dog Financial, LLC approved the VA-backed loan (which was funded by Platinum Mortgage, Inc., a "financial institution" as defined by Title 18, United States Code, Sections 20 and 27) for $265,000 to purchase the home at 31 Daniel Brooke Drive from Fannie Mae. T.F. signed closing documents on or about February 26, 2016.

15. Approximately six months after closing, JOHNSON and T.F. began listing the property at 31 Daniel Brooke Drive as a short-term rental on Airbnb. T.F. never resided in the home.

### Example #3: 64 Pine Cone Drive, Asheville, North Carolina 28805

16. JOHNSON and co-conspirator "N.P." sought to purchase a home located at 64 Pine Cone Drive, Asheville, North Carolina, to use as a short-term rental. JOHNSON and N.P. agreed that N.P. would purchase the property. JOHNSON acted as N.P.'s real estate agent and directed N.P. to an FHA-insured loan to purchase the property. N.P. and JOHNSON agreed that JOHNSON would manage the short-term rental of the property.

17. On or about October 20, 2016, N.P. submitted a loan application package to Federal Savings Bank, a financial institution as defined by Title 18, United States Code, Section 20. N.P. also submitted the loan package to the U.S. Department of Housing and Urban Development, Federal Housing Administration, for mortgage insurance. At JOHNSON's direction, N.P. falsely declared on several different forms that he intended to use the property as a primary residence, even though JOHNSON and N.P. secretly had agreed to use the property immediately as a short-term rental. N.P. never intended to reside at the property.

18. Relying on these material misrepresentations of fact, Federal Saving Bank approved a loan for approximately $247,435 for N.P. to purchase the property located at 64 Pine Cone Drive, Asheville. The loan was endorsed and insured by the Federal Housing Administration. N.P. closed the loan on or about November 23, 2016.

19. N.P. never took residence in the home, and JOHNSON immediately began to rent the home as a short-term vacation rental.

# COUNT ONE
# (Bank Fraud)
# (18 U.S.C. § 1344)

20. Introductory paragraphs 1 – 19 are incorporated herein by reference.

21. From in or about August 2012 through in or about November 2019, in Buncombe County, within the Western District of North Carolina, and elsewhere, the defendant,

SHAWN THOMAS JOHNSON

aided and abetted by others known and unknown to the United States Attorney, did knowingly execute and attempt to execute a scheme and artifice to defraud financial institutions, and to obtain money and funds under the custody and control of financial institutions by means of false and fraudulent pretenses, representations, and promises, as described in the Introductory paragraphs, all in violation of Title 18, United States Code, Section 1344.

## NOTICE OF FORFEITURE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in this bill of information; and

b. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

The following property is subject to forfeiture on one or more of the grounds stated above: a forfeiture money judgment in an amount to be determined prior to sentencing, such amount constituting the net proceeds of the violations set forth in this bill of information.

DENA J. KING
UNITED STATES ATTORNEY

*[signature]*

DON GAST
ASSISTANT UNITED STATES ATTORNEY
N.C. Bar Number: 23801
100 Otis Street, Suite 233
Asheville, NC 28801
Telephone: (828) 271-4661
Facsimile: (828) 271-4670
Don.Gast@usdoj.gov