# IN THE UNITED STATES DISTRICT COURT FOR THE
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 1:22-cr-00016-MR-WCM

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>SHAWN THOMAS JOHNSON, )<br>)<br>Defendant. )<br>_____ ) | **PRELIMINARY ORDER OF FORFEITURE FOR SPECIFIC PROPERTY** |

**THIS MATTER** is before the Court on the Government's Revised Motion for Preliminary Order of Forfeiture for Specific Property. [Doc. 59].

**I.  BACKGROUND**

On March 11, 2022, the Defendant Shawn Thomas Johnson was charged in a one-count Bill of Information with bank fraud, in violation of 18 U.S.C. § 1344. [Doc. 1]. On March 25, 2022, the Defendant pled guilty to Count One of the Bill of Information pursuant to a written Plea Agreement. [Doc. 3]. According to the Factual Basis submitted in support of the Plea Agreement, beginning in 2012, the Defendant and other individuals acting at his direction fraudulently obtained millions of dollars in loans to purchase properties that the Defendant effectively owned, managed, and rented through various nominees and companies. [See Doc. 4: Factual Basis at ¶

4]. Through this scheme, the Defendant "and his co-conspirators closed on at least sixteen loans from financial institutions, totaling over $3.5 million, to purchase real estate." [Id. at ¶ 6]. Once these properties were acquired, the Defendant used them to generate income as short-term rentals. [Id.].

In the Plea Agreement, the Defendant agreed to the entry of a forfeiture money judgment [Doc. 3 at ¶ 8(b)] and further agreed that the Government had satisfied the factors set forth in 21 U.S.C. § 853(p) so that the forfeiture money judgment may be satisfied through the forfeiture of substitute property. [Id. at ¶ 8(d)]. On April 27, 2023, the Court entered an Order granting the Government a forfeiture money judgment in the amount of $2,778,237.00, representing the "net proceeds of the Defendant's bank fraud offense." [Doc. 57 at 14].

By the present motion, the Government moves, pursuant to Rule 32.2(b) and (e) of the Federal Rules of Criminal Procedure, 18 U.S.C. § 982(a)(2), and 21 U.S.C. § 853(p), for the entry of a preliminary order of forfeiture of the following assets in partial satisfaction of the forfeiture money judgment: proceeds derived from the sale/foreclosure of 31 Daniel Brooke Drive, 24 Apogee Drive, 23 Springwood Drive, and 577 Emma Road; an unused bankruptcy retainer in the trust account of attorney R. Todd Mosley; and the Defendant's interests in The Spice Must Flow, LLC and Stay

Asheville, Inc. The Government contends that these funds and business interests are properties constituting or derived from proceeds that the Defendant obtained directly or indirectly as the result of fraud, and/or are substitute property. [Doc. 59].

The Defendant filed a response in opposition to the Government's motion on June 23, 2023. [Doc. 62]. The Government filed its reply in support of its motion on June 30, 2023. [Doc. 63].

Having been fully briefed, this matter is ripe for disposition.

## II. STANDARD OF REVIEW

Pursuant to 18 U.S.C. § 982(a)(2), any person convicted of bank fraud in violation of 18 U.S.C. § 1344 shall forfeit to the United States "any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation." 18 U.S.C. § 982(a)(2). Where the Government seeks forfeiture of specific property, the Government must establish "the requisite nexus between the property and the offense." Fed. R. Crim. P. 32.2(b)(1)(A). Where the Government seeks a personal money judgment, the Court "must determine the amount of money that the defendant will be ordered to pay." Id. Once a forfeiture money judgment is entered, the Court has the authority to order the forfeiture of substitute assets to satisfy a forfeiture money judgment, provided that the Government

satisfies the substitute property provisions of 21 U.S.C. § 853(p)(1)(A)-(E). Fed. R. Crim. P. 32.2(e); 21 U.S.C. § 853(p)(2). The Government has the burden of proving forfeiture by a preponderance of the evidence. United States v. Cherry, 330 F.3d 658, 670 (4th Cir. 2003).

### III. FACTUAL BACKGROUND

The assets subject to forfeiture and the transactions that resulted in these assets are as follows:

**A. 31 Daniel Brooke Drive Proceeds/Interest in 18 Brennan Broke Me, LLC**

In March 2023, 18 Brennan Broke Me, LLC, Tomasz Foster, and GRB 31 Daniel Brook Drive, Inc.[1] sold 31 Daniel Brooke Drive, one of the properties identified in the Court's Order as having a nexus to the fraud. [Doc. 59-1]. As a result, approximately $184,986.27 in sale proceeds were deposited into the First Citizens Bank account of 18 Brennan Broke Me, LLC. The U.S. Marshals Service seized those funds pursuant to a Seizure Warrant issued by the Court. [Case 1:23-mj-20, Doc. 1-2: SA Wahl Aff.]. Further, according to the Defendant's property manager, Julie Nash, an additional $5,000 in funds from the sale were held back to facilitate the transaction and currently are held in the trust account of attorneys Barnwell and Long, PLLC.

---

[1] The Government advises that it could not locate GRB 31 Daniel Brooke Drive, Inc. on the North Carolina Secretary of State website.

4

The Government contends that the total $189,986.27 in proceeds of the sale of the Daniel Brooke property is subject to forfeiture as proceeds of fraud.

Further, North Carolina Secretary of State records reflect the creation of 18 Brennan Broke Me, LLC in 2019 and, as of the last Annual Report (2022), identify the Defendant as the sole member and Nash as the manager. [Doc. 59-2]. The Defendant used 18 Brennan Broke Me, LLC to acquire and hold title to real property that he funded via fraud. The Government contends that the Defendant's interest in 18 Brennan Broke Me, LLC is subject to forfeiture as fraud proceeds.

### B. 24 Apogee Drive Proceeds

In Spring 2023, one or more lenders foreclosed upon 24 Apogee Drive, one of the properties the Court identified as having a nexus to the fraud and that was previously titled to GRB Apogee Drive, LLC. GRB Apogee Drive, LLC, was previously registered with the North Carolina Secretary of State but has now been administratively dissolved. [Doc. 59-4]. The Defendant was the CEO and Registered Agent of GRB Apogee Drive, LLC. [Id.]. According to Ms. Nash, following foreclosure, net sale proceeds of $10,980 were deposited into the account of Leloo Dallas MultiPass, LLC, another entity controlled by the Defendant, but some of those funds were used for closing costs, resulting in a balance of $3,980 which Ms. Nash deposited into

the trust account of Mr. Devereux. The Government contends that these funds are fraud proceeds.

### C. 23 Springwood Drive Proceeds/Interest in Leloo Dallas MultiPass, LLC

In or around April 2023, one or more lenders foreclosed upon 23 Springwood Drive, one of the properties the Court identified as having a nexus to the fraud. [See Doc. 59-7]. Prior to foreclosure, this real estate was titled to GRB SpringWood Drive, LLC, which, in turn granted the property to18 Brennan Broke Me, LLC by action of the Defendant. [See Doc. 59-5]. GRB SpringWood Drive, LLC, was an entity previously registered with the North Carolina Secretary of State but that has now been administratively dissolved. [Doc. 59-6]. The Defendant was listed as the CEO and Registered Agent of this LLC. [Id.].

According to Ms. Nash, the sale initially generated net proceeds of $15,000 deposited into an account of Leloo Dallas MultiPass, LLC and then deposited by Ms. Nash to Mr. Devereux's trust account. Further, according to the Buncombe County Clerk of Court Final Report and Account of Foreclosure Sale, $83,349.18 in remaining surplus sale proceeds remains from the sale [Doc. 59-7] and the Clerk is awaiting instructions from Ms. Nash or elsewhere on disposal of these surplus moneys, resulting in a total of $98,349.18 in funds derived from this sale. The Government contends that

these $98,349.18 in total funds being held in Mr. Devereux's trust account and at the Buncombe County Clerk of Court are fraud proceeds.

Further, the North Carolina Secretary of State records reflect that Leloo Dallas MultiPass, LLC was created in 2019. [Doc. 59-8]. A 2023 Annual Report identifies the members of Leloo Dallas as the Defendant and Ms. Nash, and indicates that Leloo Dallas engages in the business of vacation rentals. [Id.]. The Government contends that the Defendant's interest in Leloo Dallas MultiPass, LLC is fraud proceeds.

**D.  577 Emma Road Assets/Interest in The Spice Must Flow, LLC**

On April 11, 2023, the Defendant, through his entity, The Spice Must Flow, LLC, sold 577 Emma Road. [Doc. 59-9]. This sale resulted in the distribution of $166,013.56 in funds that are now being held in the trust account of Mr. Devereux. [Doc. 59-10]. North Carolina Secretary of State records reflect the formation of The Spice Must Flow in 2019 and, as of the last Annual Report (2022), identify the members as Defendant and "Thomas Johnson."[2] [Doc. 59-11]. The records indicate that The Spice Must Flow, LLC engaged in the business of short-term rentals. [Id.]. The Government

---

[2] The Government asserts that "Thomas Johnson" is an alias for the Defendant. The Defendant has not contested this assertion.

contends that the $166,013.56 in funds and the Defendant's interest in The Spice Must Flow, LLC are substitute property.

### E. Unused Bankruptcy Retainer/Interest in Stay Asheville, Inc.

In 2023, the Defendant, through another of his entities named Stay Asheville, Inc., engaged attorney R. Todd Mosley to file a bankruptcy petition on behalf of Stay Asheville. [WDNC Bankruptcy Case 1:23-bk-10030, Doc. 1]. According to North Carolina Secretary of State Records, the Defendant incorporated Stay Asheville in 2017. [Doc. 59-12]. According to the latest annual report (2019), the Defendant was the Chief Executive Officer. [Id.]. Attorney Mosley filed the Petition but, on March 21, 2023, the Bankruptcy Court dismissed the Petition and barred the petitioner from refiling. [Doc. 63-2: Order Granting Bankruptcy Administrator's Motion to Dismiss Case and Bar the Debtor from Refiling]. Ms. Nash, through her attorney, has advised the Government that Mr. Mosley is currently holding $10,000 in unused retainer and that Mr. Mosley is awaiting an order of this Court before disbursing the money. The Government contends that this money is substitute property or, alternatively or in addition, the Defendant's interest in Stay Asheville, Inc., which he used to rent various properties (including

fraudulently acquired properties), is subject to forfeiture as substitute property.[3]

## IV.    DISCUSSION

While the Defendant does not contest the forfeiture of the proceeds from the sale/foreclosure of three of the assets identified by the Government—31 Daniel Brooke Drive, 24 Apogee Drive, and 23 Springwood Drive[4]—the Defendant argues that the Government has not satisfied the requirements of 21 U.S.C. § 853(p) such that it can pursue substitute assets such as 577 Emma Road, the unused bankruptcy retainer, or the Defendant's interest in The Spice Must Flow, LLC and Stay Asheville, Inc. [Doc. 62].

"It is well-established that the Government may seek forfeiture of substitute assets when a defendant does not have the money to satisfy a money judgment." United States v. Manlapaz, 825 F. App'x 109, 116 (4th Cir. 2020).  Section 853(p) permits the forfeiture of substitute property and

---

[3] The Government contends that Stay Asheville is also likely fraud proceeds but, that it only asserts a substitute property theory in its motion for the sake of simplicity.

[4] The Defendant makes no argument regarding the forfeitability of the Defendant's interest in 18 Brennan Broke Me, LLC or Leloo Dallas MultiPass, LLC.  Because the Defendant does not contest the forfeiture of the proceeds received by these LLCs, and it does not appear that these LLCs have any assets other than the proceeds of such sales, it appears that the Defendant is not contesting the forfeiture of the Defendant's interests in those LLCs.

requires a court to order the forfeiture of "any other property of the defendant" up to the value of the proceeds if, "as a result of any act or omission of the defendant[,]" the proceeds:

> (A) cannot be located upon the exercise of due diligence;
>
> (B) [have] been transferred or sold to, or deposited with, a third party;
>
> (C) [have] been placed beyond the jurisdiction of the court;
>
> (D) [have] been substantially diminished in value; or
>
> (E) [have] been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p)(1)-(2). "Section 853(p) is not discretionary; rather, the statute mandates forfeiture of substitute assets when the tainted property has been placed beyond the reach of a forfeiture." United States v. Alamoudi, 452 F.3d 310, 314 (4th Cir. 2006) (internal quotation marks omitted). Because substitute assets need not be connected to the offense giving rise to forfeiture, "there are no limits on what property may be substituted for the proceeds." Manlapaz, 825 F. App'x at 117.

In granting the forfeiture money judgment, the Court found that a number of the Defendant's properties had "been refinanced or subject to bankruptcy or foreclosure proceedings" rendering them "effectively

unavailable for the purpose of forfeiture." [Doc. 57 at 18-19]. The evidence presented by the Government in support of its present motion makes clear that these properties were rendered unavailable for forfeiture through the actions of the Defendant. The Defendant created no less than seventeen entities to own and manipulate assets. [Doc. 63-1: USM Mitnitsky Aff. at ¶ 4 (discussing investigation into entities and individuals associated with Defendant)]. Similarly, he used no less than six individual nominees and related entities to control rental property listings whereby he obtained rental proceeds, including from properties funded by fraud. [Id. at ¶ 5]. Additionally, he manipulated many of the assets that he controlled—including but not limited to fraud proceeds—via the federal bankruptcy system. [Doc. 63-2: Order Granting Bankruptcy Administrator's Motion to Dismiss Case and Bar the Debtor from Refiling]. The Defendant also manipulated and interfered with the state foreclosure system, to the point that a state court banned him from such activity. [Doc. 39-1: Buncombe County Superior Court Gatekeeper Order]. Finally, the Defendant has expressly attempted on multiple occasions during consensually monitored jail calls to manipulate and/or coordinate for others acting on his behalf to move assets, including assets that the Defendant believed would be

identified for forfeiture and including, but not limited to, fraud proceeds. [See Doc. 63-1: USM Mitnisky Aff. at ¶ 7].

For all of these reasons, the Court finds and concludes that the Government has satisfied the provisions of § 853(p) with respect to 577 Emma Road, the unused bankruptcy retainer, or the Defendant's interest in The Spice Must Flow, LLC and Stay Asheville, Inc. The Government's motion for a preliminary order of forfeiture is therefore granted.

**IT IS, THEREFORE, ORDERED** that the Government's Revised Motion for Preliminary Order of Forfeiture for Specific Property [Doc. 59] is **GRANTED** as follows:

1. Based upon Defendant's conviction, the evidence, and the information on the record, the United States is authorized to take and maintain possession of the following property belonging to Defendant, and the property is hereby forfeited to the United States for disposition according to law, provided, however, that such forfeiture is subject to any and all third party claims and interests, pending final adjudication herein:

- Approximately $189,986.27 in funds derived from the sale of 31 Daniel Brooke Drive, Asheville, North Carolina, $184,986.27 of which is currently held by the United States Marshals Service and $5,000.00 of which is currently in the possession of attorneys Barnwell & Long, PLLC, such funds constituting or derived from fraud proceeds;

- Any and all interest of Defendant in 18 Brennan Broke Me, LLC, such interest constituting or derived from fraud proceeds;

- Approximately $3,980.00 in funds derived from the sale of 24 Apogee Drive, Asheville, North Carolina, which is currently in the possession of attorney Devereux, such funds constituting or derived from fraud proceeds;

- Approximately $98,349.18 in funds derived from the sale of 23 Springwood Drive, Asheville, North Carolina, $83,349.18 of which is currently held by the Buncombe County Clerk of Court and $15,000.00 of which is currently in the possession of attorney Devereux, such funds constituting or derived from fraud proceeds;

- Any and all interest of Defendant in Leloo Dallas MultiPass, LLC, such interest constituting or derived from fraud proceeds;

- Approximately $166,013.56 in funds derived from the sale of 577 Emma Road, Asheville, North Carolina, which is currently in the possession of attorney Devereux, such funds subject to forfeiture as substitute property;

- Any and all interest of Defendant in The Spice Must Flow, LLC, such interest subject to forfeiture as substitute property;

- Approximately $10,000 derived from Stay Asheville, Inc, which is currently in the possession of attorney Todd Mosley, such funds subject to forfeiture as substitute property; and

- Any and all interest of Defendant in Stay Asheville, Inc., such interest subject to forfeiture as substitute property.

2. Pursuant to 21 U.S.C. § 853(n)(1), the Government shall publish notice of this Order; notice of its intent to dispose of the property in such

13

manner as the Attorney General may direct; and notice that any person, other than the Defendant, having or claiming a legal interest in any of the above-listed forfeited property must file a petition with the Court within thirty days of the final publication of notice or of receipt of actual notice, whichever is earlier. This notice shall state that the petition shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the property, shall be signed by the petitioner under penalty of perjury, and shall set forth the nature and extent of the petitioner's right, title or interest in the forfeited property and any additional facts supporting the petitioner's claim and the relief sought. The United States may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in property that is the subject of this Order of Forfeiture, as a substitute for published notice as to those persons so notified.

3. Upon adjudication of all third-party interests, this Court will enter a Final Order of Forfeiture. If no third parties file petitions within the time period permitted by law, this Order shall become final by operation of law.

4. All finally forfeited assets shall be credited against the outstanding balance of the Money Judgment Order issued by this Court.

5. The Government shall, within 30 days of this Order, file its valuation of the Defendant's interest in 18 Brennan Broke Me, LLC; Leloo

14

Case 1:22-cr-00016-MR-WCM   Document 69   Filed 09/07/23   Page 14 of 15

Dallas MultiPass, LLC; The Spice Must Flow, LLC; and Stay Asheville, Inc., apart from the funds that are or may be held by such entities, as set forth herein, as well as the basis therefor, and whether the forfeiture of such interests fully discharges the Forfeiture Money Judgment against the Defendant, so that proper credit can be assessed against such Forfeiture Money Judgment.

**IT IS SO ORDERED.**

Signed: September 7, 2023

Martin Reidinger
Chief United States District Judge